### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BEMIS COMPANY INC.,** | No. 3:07cv1307 |
| Plaintiff | |
| v. | |
| **GRAPHIC COMMUNICATION UNION LOCAL NUMBER 735-S,** | |
| Defendant | |

## MEMORANDUM

Before the court for disposition are cross-motions for summary judgment in this labor relations case. The motions have been fully briefed and argument. The matter is thus ripe for disposition.

**Background**

The following background facts are largely undisputed. Plaintiff Bemis Company Inc. ("Bemis" or "plaintiff") is a business with a Polyethylene Packaging facility located in West Hazleton, Pennsylvania. Plaintiff has entered into a collective bargaining agreement ("CBA") with Defendant Graphic Communication Union Local Number 735-S, ("Union" or "defendant") covering various employees including James Elswick, who Bemis employed for approximately twenty years. Bemis had some issues with Elswick regarding their attendance policy.

On May 17, 2006, the union and Bemis entered into a Last Chance Agreement ("LCA") regarding Elswick. The LCA provided that Elswick had accumulated sufficient warnings to be discharged for violation of the attendance policy. Instead of terminating Elswick, the employer offered the LCA, which provided that Elswick could remain employed as long as for a twelve-month period he was not late, absent or leave work early. Several exceptions, including hospitalization, were included in the LCA.

On August 3, 2006, Elswick was on his way to work when he stopped

to purchase gasoline for his vehicle.  He tripped over the fueling hose and injured his back.  He called into work to report his injury and went to see a doctor.  The doctor referred him to the Hazleton Imaging Center for additional diagnostic testing - - a CT scan to determine the extent of his injury.  Elswick was placed under restrictions that prohibiting him from lifting and/or pushing.

He contacted Bemis to obtain forms in order to apply for Family and Medical Leave Act leave.  He was told that he would not be eligible for such leave.  Then on August 10, 2006, Elswick was notified that he was terminated for violating the LCA.  The defendant union filed a grievance with regard to the termination.  The grievance asserted that the termination was wrongful and based upon Elswick's ongoing medical condition and in violation of the CBA.  It requested that Elswick be reinstated with full back pay.  On September 8, 2006, the Bemis human relations manager denied the grievance.  The CBA provides that such disputes then be submitted to arbitrators from the American Arbitration Association ("AAA").

The matter then proceeded to arbitration before an AAA arbitrator selected by the parties, Patrick McFadden.  On May 25, 2007, the arbitrator issued an award sustaining the grievance in full and ordering Elswick's reinstatement.  The arbitrator found that Elswick's treatment at the Hazleton Imaging Center was "hospitalization" as provided in the LCA, and he should not have been terminated for missing work on August 3, 2006.

Bemis appeals this decision to this court.  The union counterclaims for enforcement of the arbitration award and attorney's fees and costs.  The parties have filed cross-motions for summary judgment bringing the

case to its present posture.

**Jurisdiction**

The parties agree that we have federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 185(c), which provides:

> For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248

(1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

As noted above, the plaintiff challenges the award of an arbitrator. We can reverse an arbitration award where it does not draw its essence from the parties agreement or in other words where the arbitrator manifests a disregard to the parties' agreement. 9 U.S.C. § 10(a). The law provides that "[A]s long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)(citation and internal quotations omitted). Thus, "o]nly where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1295 (3d Cir.1996)(citations and internal quotations omitted).

The Third Circuit Court of Appeals has explained the standard of review in arbitration matters as such:

> The National Labor Relations Act, as amended by the Taft-Hartley Act, adopts a national

4

>policy favoring resolution of labor-management disputes by arbitration. An agreement to arbitrate disputes that may arise in the future is valid and enforceable. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Federal courts therefore do not ordinarily review the merits of an arbitration award where the parties have agreed to be bound by an arbitrator's decision. E.g., United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).
>     There are limits to such judicial deference. Courts may vacate awards tainted by fraud or bias, or, as is claimed by the employer here, awards dealing with matters outside the arbitrator's authority. 9 U.S.C. § 10. When an arbitrator's authority rests solely upon the text of the collective bargaining agreement, the award "must draw its essence" from the collective bargaining agreement. Enterprise Wheel & Car Corp., 363 U.S. at 597-98, 80 S.Ct. at 1361; Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir.1982).

High Concrete Structures, Inc. of N.J. v. United Elec., 879 F.2d 1215, 1218 (3d Cir. 1989).

Additionally, we may vacate an award when the arbitrator is "guilty of misconduct . . . or . . . any . . . misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).  Thus, we must determine whether the arbitrator engaged in prejudicial misconduct.  The party challenging the award, here the plaintiff, bears the burden of establishing prejudice.  Mutual Fire Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd., 868 F.2d 52, 57 (3d Cir. 1989).

In reviewing an arbitration award, we are guided by a strong presumption in favor of its validity.  Mutual Fire Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd., 868 F.2d 52, 56, 57 (3d Cir. 1989).

The plaintiff in the instant case\raises three arguments that it asserts justifies vacating the arbitration award. We will address each in turn.

### 1.  An arbitrator's finding that a LCA is "unreasonable" is sufficient cause to vacate the award

First, plaintiff argues that the arbitrator manifested a disregard to the parties' agreement and thus it may be reversed.  We are unconvinced.

Here, the plaintiff argues that the arbitrator disregarded the parties' agreement.  In fact, plaintiff argues that he found it unreasonable even though it had been ratified by the employer, employee and the union.  The award therefore does not draw its essence from the LCA and should be reversed.

As noted above, Elswick was terminated from his employment for missing work despite the provisions of the LCA that provided he had to be at work every day unless one of several exceptions applied.  One of the exceptions was if Elswick was "hospitalized."  The issue the arbitrator found dispositive of the arbitration was whether the plaintiff had been "hospitalized" as that term was used in the LCA.  He found as follows:

> Accordingly, the undersigned would conclude that the Grievant having been referred by his medical physician for testing purposes to Hazleton Imaging Center which resulted in a positive injury diagnosis does constitute hospitalization under the terms of the LCA. . . the undersigned would further find the requirement mandating (inpatient) hospitalization involving an absence due to illness or injury to be considered an unreasonable expectation under the standards of justice and fair dealing."

(Award ¶ f, ¶ l).

We disagree with the plaintiff's position.  The language that the arbitrator used does not indicate that he was disregarding the agreement or finding it unreasonable.  Rather, he was interpreting a term found in the agreement, "hospitalization."  This term is not defined in the agreement and it is appropriate therefore for the arbitrator to determine its meaning.  He determined the meaning for the word and concluded that other

6

meanings for the word would be "unreasonable."  This analysis is not the equivalent to finding that the agreement itself was unreasonable.  Thus, we find no merit to the plaintiff's first argument.

**2. By soliciting, considering and basing his decision on *ex parte* evidence not submitted by either party, of which Bemis had no notice or opportunity to comment, Arbitrator MacFadden engaged in arbitral misbehavior which requires that his award be vacated**

Plaintiff asserts that after the hearing was completed and as he was in the process of making his decision, the arbitrator solicited, considered and based his decision on *ex parte* evidence as to a material issue.  The arbitrator contacted the Hazleton Imaging Center and spoke to its administrator and obtained information about their facility.  Plaintiff asserts that the receipt of this evidence constitutes prejudicial misbehavior in violation of 9 U.S.C. § 10(c)(3) of the Federal Arbitration Act.  Without notice and an opportunity to respond, plaintiff asserts that this gathering of evidence was improper.

Defendant's position is that the arbitrator clearly based his award on the testimony and other evidence presented at the hearing.  The alleged *"ex parte* contacts" were merely a one-time brief and general inquiry to corroborate evidence submitted at the hearing.  He obtained no more information from the administrator than he could have from the Hazleton Imaging Center's website, which would have been appropriate under the rules.

After a careful review, we agree with the defendant.  It is uncontested that the arbitrator contacted the administrator of the Hazleton Imaging Center after the arbitration, and the issue is whether this was prejudicial misbehavior.

We may vacate an award when the arbitrator is "guilty of misconduct

7

. . . or . . . any . . . misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).   Thus, we must determine whether the arbitrator engaged in prejudicial misconduct.   Plaintiff bears the burden of establishing prejudice.   Mutual Fire Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd., 868 F.2d 52, 57 (3d Cir. 1989).

In support of its position, the plaintiff cites to Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649, 653 (5th Cir. 1979).  In Totem the Eighth Circuit Court of Appeals did in fact find that the *ex parte* receipt of evidence by an arbitration panel was prejudicial misbehavior.  The facts of that case are distinguishable from the instant case.  In determining the amount of damages in that case the arbitrators made *ex parte* contact to counsel for one of the parties and asked for a particular figure.  Id. at 652.  The panel did not notify the other side of this *ex parte* contact and never gave it an opportunity to contest the figure.  Id. Regardless, the panel adopted the figure in its ruling.  Id.  The court found that the arbitrators had engaged in prejudicial misbehavior.

Defendant asserts that Totem is distinguishable from the instead case and that the facts we are presented with are more analogous to M & A Elec. Power Co-op. v. Local Union No. 702, Intern. Broth. of Elec. Workers, AFL-CIO, 773 F. Supp. 1259 (E.D. MO. 1991).  In M & A, the arbitrator made post-hearing inquiries to an expert in cranes with regard to an issue in that case involving a runaway crane.  Id. at 1261.  The court noted that the consultation was a violation of the rules, but continued its inquiry to determine if the misconduct deprived any party of a fair hearing. Id. at 1262.  The court concluded that evidence was not relied upon heavily by the arbitrator in making his award, therefore, none of the parties were

deprived of a fair hearing.  Id. at 1263.

Similar to M & A, and unlike Totem, the arbitrator in the instant case did not rely heavily on the *ex parte* information.  The task the arbitrator performed was to determine whether the term "hospitalization" as used in the LCA included only inpatient treatment.  The outside consultation did not address this issue, but instead addressed the issues of what services were provided by the Hazleton Imaging Center.  Additionally, unlike Totem, the arbitrator did not make an *ex parte* contact to the attorney of one of the parties.  Rather, he contacted a non-party. The arbitrator learned from the Center that it is a stand-alone medical facility that provides CT scans that the local hospital is not equipped to perform.  (Doc. 30-2, Opinion and Award of Arbitrator at 51).   Plaintiff does not assert that the information was incorrect or that they would have presented some evidence to rebut it or cast doubt on the information.  Additionally, the arbitrator did not try to hide that he sought the information, in fact he cited to the information in his written award.  We find, therefore, that the plaintiff has not established that he was prejudiced in any way by the arbitrator obtaining the information and thus this ground is not a sufficient basis upon which to vacate the award.

**3. Arbitrator McFadden's failure to disclose his acceptance of a labor advocate position with a labor organization violated the parties agreement and his agreed ethical mandate which necessitates the award be vacated**

The final issue raised by the plaintiff involves the arbitrator's failure to disclose his acceptance of a labor advocate position with a labor organization.  Subsequent to accepting the position as arbitrator, but before the hearing, Arbitrator McFadden accepted a position as a labor advocate with the Labor Services Division of the Fraternal Order of Police,

9

a labor advocacy group.   Plaintiff asserts that McFadden was required to disclose this to the parties pursuant to the labor agreement - - not doing so is reason to vacate the award according to the plaintiff.

The parties in the instant case agreed to arbitrate disputes under the American Arbitration Association's ("AAA") policies and procedures. (Compl. Ex. 1, CBA, at Art. XXI(E)(2)).   Under the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the AAA, if an arbitrator serves as an advocate for or representative of other companies or unions in labor relations, such activities must be disclosed before accepting appointment as an arbitrator.  "The burden of disclosure rests on the arbitrator.  After appropriate disclosure, the arbitrator may serve if both parties so desire. . . ."  (Doc. 23-3, Code of Professional Responsibility at 2(B)(2) and 2(B)(5)).

In the instant case, the arbitrator was a field representative for a union, the Fraternal Order of Police ("FOP").   The parties in the instant case made a request for arbitration and the AAA forwarded the names, and other biographical information/qualifications of eleven potential arbitrators on October 31, 2006.  (Plaintiff's Statement of Facts ("Pl. S.O.F." at ¶ 10).[1]  In November 2006, after the biographical/qualification material was provided, Arbitrator McFadden began employment with the Fraternal Order of Police.  (Pl. S.O.F. ¶ 11).   The parties selected McFadden as arbitrator on December 19, 2006.  (Pl. S.O.F. ¶ 15).  The AAA appointed McFadden on January 10, 2007 and forwarded to the parties a second biography of the arbitrator, which also failed to mention

---

[1]We will cite to the plaintiff statement of facts for factual assertions that are generally uncontested.

10

McFadden's association with the labor union.  (Id.).  The grievance hearing was held on March 30, 2007 without the disclosure being made.  (Pl. S.O.F. ¶ 18).  Plaintiff asserts that it never learned of McFadden's association with the FOP until shortly before the amended complaint was filed in November 2007.[2]  Attached to the complaint is a document from the FOP's website dated December 2006 that announces the hiring. (Doc. 15, Amended Compl. Ex. 6, p. 6).

Once again, we apply the prejudice standard found in 9 U.S.C. § 10, and once again, plaintiff has failed to meet its burden to establish that it was prejudiced by the arbitrator's failure to disclose that after his name was originally submitted as a potential arbitrator he accepted employment with the FOP.  It is not asserted that the FOP has any interest in the outcome of this case, but merely that the arbitrator should have disclosed to the parties that he was associated with the group.   Thus, we find that the fact that the arbitrator failed to make this disclosure does not overcome the strong presumption in favor of upholding the award. Mutual Fire Marine & Inland Ins. Co., 868 F.2d at 56, 57.

Accordingly, the plaintiff's motion for summary judgment based on this ground will be denied.

Defendant filed a counterclaim against the defendant which seeks an order directing Bemis to comply with the arbitration award and pay the defendant's counsel fees.  We will grant judgment to the defendant on the counterclaim with regard to directing Bemis to comply with the arbitration

---

[2]Plaintiff does not indicate how exactly it discovered that McFadden worked for the FOP.  Evidently, the website that they cite was public and contained the information in December 2006- -  before the arbitration occurred.

11

award. No reason has been presented that would justify Bemis in not complying with the award. Therefore, plaintiff must comply with it.

The only remaining issue is whether we will award counsel fees to the defendant. Defendant asserts that attorney's fees are appropriate where the party defaulting on the award does not have a reasonable chance to prevail. <u>Teamsters 765 v. Stroehmann Bros. Co.</u>, 625 F.2d 1092, 1094 (3d Cir. 1980). We find that the award of attorney's fees is not appropriate. Plaintiff presented arguments as outlined above that provided it a reasonable chance to prevail.

**Conclusion**

Summary judgment will be denied to the plaintiff on the complaint and granted to the defendant on the counterclaim. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEMIS COMPANY INC., : No. 3:07cv1307
        Plaintiff :
   v. :
 :
GRAPHIC COMMUNICATION :
UNION LOCAL NUMBER 735-S, :
        Defendant :

## ORDER

**AND NOW**, to wit, this 15th day of September 2008, the plaintiff's motion for summary judgment (Doc. 20) is hereby **DENIED**. The defendant's motion for summary judgment (Doc. 27) is **GRANTED**. The defendant's request for attorney's fees is **DENIED**. The Clerk of Court is directed to close this case.

                                  **BY THE COURT:**

                                  **s/ James M. Munley**
                                  **JUDGE JAMES M. MUNLEY**
                                  **United States District Court**